MAXINE PINSON, Plaintiff-Appellant, *v.* ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)   No. 76-290

Opinion filed February 8, 1979.

ROMITI, J., dissenting.

Philip F. Maher, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (John L. Kirkland, D. Kendall Griffith, and Thomas M. Hamilton, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Maxine W. Pinson, plaintiff, brought this action against defendant, Allstate Insurance Company, in the circuit court of Cook County to reinstate benefit payments and obtain treble damages under an extended

personal injury protection insurance contract she entered into with defendant. At trial, defendant's motion to dismiss plaintiff's complaint was granted and plaintiff appeals. We reverse and remand to the trial court for further proceedings.

Plaintiff purchased automobile insurance from defendant in 1971. The policy issued by defendant consisted of the main policy and a subsequently issued rider. The policy provided "basic personal injury protection" (Coverage VA) and the rider added Coverage VB—excess personal injury protection. The rider was issued by defendant after the passage of article XXXV of the Insurance Code (hereinafter article 35) (Ill. Rev. Stat. 1971, ch. 73, pars. 1065.150 through 1065.163), commonly known as the no-fault statute. The rider stated:

"[Defendant] agrees * * * to provide the following coverage, in accordance with Article XXXV of the Illinois Insurance Code, subject to all of the provisions of the policy except as modified herein; * * *."

The rider then specifically described the benefits provided by Coverage VB, followed by sections containing definitions, exclusions, limits of liability and conditions.

On February 12, 1972, while the insurance policy was in effect, plaintiff was severely injured in an automobile accident. She was immediately hospitalized and underwent surgery which required the removal of 1 inch of lateral interior margin of the right temporal lobe of her brain. She subsequently suffered post-traumatic epilepsy and left hemoporesis, or a slight paralysis, on one side of her body, further complicated by poor equilibrium and speech problems.

In a report to defendant, plaintiff's treating physician's prognosis was that she suffered from organic brain disease syndrome and would "probably never" be able to return to work. Her employer tested her ability to perform the job she held at the time of her accident and reported in a letter that she could not perform a simple assignment. As of the date of this appeal, plaintiff was unable to return to work and receives continuous medical care, supervision and treatment to maintain everyday functions at hospitals and at Magnus Farm and Nursing Home.

Pursuant to the terms of the insurance policy, from the time of the accident in February 1972 until about April 1973, defendant made payments to plaintiff for both medical and loss of income benefits. In March 1973, defendant directed an investigation to determine plaintiff's progress and the extent of her disability. Defendant demanded proof that plaintiff's disability continued and plaintiff provided a full medical history, additional medical reports, and reports from the supervisor at the nursing home, all attesting to the fact that her disability was caused by the accident and was continuing and permanent. The investigation revealed

that plaintiff had suffered prior mental problems and defendant contended that there was a discrepancy between her claimed medical and physical condition and that observed by its investigators. Defendant terminated benefit payments about April 1973.

Thus, plaintiff filed an action against defendant seeking a declaration that (1) she was entitled to medical expenses and loss of income benefits, (2) article 35 of the Insurance Code, including section 603(b), which provides for the recovery of treble damages in the event of a willful refusal to pay benefits, was incorporated into the insurance policy, and (3) defendant was liable for treble damages. Plaintiff also sought a money judgment for her medical expenses, loss of income, treble damages and a recovery based on intentional and outrageous conduct.

Defendant moved to dismiss plaintiff's complaint for failure to state a cause of action. A hearing on the motion was limited to the question of whether plaintiff was entitled to seek treble damages on the ground that section 603(b) of article 35 was incorporated by reference into the policy. Defendant's motion was sustained on the basis that article 35 was declared unconstitutional by the Illinois Supreme Court in *Grace v. Howlett* (1972), 51 Ill. 2d 478, 283 N.E.2d 474. An order was entered dismissing only those portions of the complaint seeking the recovery of treble damages. On rehearing, a motion to vacate the order was denied. Plaintiff appeals from the order on rehearing.

The issues on appeal are (1) whether section 603(b) of article 35 was incorporated by reference into the insurance contract and (2) whether defendant waived its unconstitutionality defense by continuing to make payments to plaintiff after article 35 was declared unconstitutional.

Defendant contends that plaintiff has no statutory right to recover treble damages because section 603(b), which created the treble damages recovery, was not incorporated by reference into the insurance contract between plaintiff and defendant. It is defendant's conviction that the phrase "in accordance with Article XXXV of the Illinois Insurance Code" is not sufficient language to incorporate the statute into the policy.

Plaintiff contends that the rider incorporated section 603(b) into the contract and argues that the language in question is comparable to language held sufficient to incorporate the statute in *Landis, for the use of Talley v. New Amsterdam Casualty Co.* (1952), 347 Ill. App. 560, 107 N.E.2d 187. In *Landis*, the insurance contract did not contain an omnibus clause but contained a statement that the policy "must comply with the 'Financial Responsibility Law' of any State which should be applicable with respect to any liability arising out of the use of the automobile of insured." The court concluded that the reference in the policy to the financial responsibility law caused the omnibus clause to be read into the policy. *Landis*, at 566.

■■ A contract may consist of several documents connected to a signed document by reference. (7039 *Wentworth Avenue Building Corp. v. Trough* (1947), 332 Ill. App. 635, 636, 76 N.E.2d 350.) The reference must show an intention to incorporate the document and make it a part of the contract. *Continental Illinois National Bank v. Art Institute* (1950), 341 Ill. App. 624, 635, 94 N.E.2d 602, 608.

■■ In the majority opinion in *McCann ex rel. Osterman v. Continental Casualty Co.* (1956), 8 Ill. 2d 476, 482-83, 134 N.E.2d 302, 305, a case involving the construction of an insurance policy, the Illinois Supreme Court refused to follow the *Landis* decision relied upon by plaintiff. The court did not agree with the reasoning used in *Landis* that a policy provision requiring compliance with the financial responsibility law of any state which should be applicable, would, by itself, require the inclusion in the policy of the omnibus clause contained in the statute without a showing of the applicability of the financial responsibility law. In the instant case, the applicability of the no-fault statute is not in question. Therefore, we follow the *Landis* decision and find that the language used by defendant in the insurance policy rider in the instant case indicated an intention to make article 35 part of the contract. Thus, section 603(b), a part of article 35, must also be written into the contract.

Defendant argues, alternatively, that even if there was an incorporation by reference of article 35 in its entirety, that incorporation became null and void when article 35 was declared unconstitutional. Plaintiff contends that defendant waived the right to raise the objection of the unconstitutionality of article 35 by continuing to pay benefits for more than a year after *Grace v. Howlett* (1972), 51 Ill. 2d 478, 283 N.E.2d 474, was decided.

■■ Whereas, the classic definition of waiver is the intentional relinquishment of a known right, in the field of insurance law a waiver is generally not express or intentional, but it is implied from the conduct of the insurer or its agents. (*Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 461, 323 N.E.2d 521, 529.) By continuing to pay first party benefits to plaintiff for 12 months after *Grace v. Howlett* was decided, defendant impliedly waived its unconstitutionality defense to the payment of treble damages to Mrs. Pinson as provided in section 603(b) of article 35.

■■ The liquidated damages clause of section 603(b) requires a willful refusal of the company to pay benefits before treble damages are due the insured. Therefore, plaintiff's cause is remanded to the trial court for a determination of whether defendant's refusal to pay plaintiff benefits was in fact willful.

For the foregoing reasons, we find no basis was established to terminate benefit payments to plaintiff and, further, this cause is reversed

and remanded to the circuit court of Cook County for further proceedings in accordance with the views expressed.

Reversed and remanded.

LINN, J., concurs.

Mr. JUSTICE ROMITI, dissenting:

I respectfully dissent.

Penalties and attorney's fees normally cannot be awarded in a suit against an insurance company unless they are provided for either by contract or by statute. (*Allstate Insurance Co. v. Alterman Transport Lines, Inc.* (5th Cir. 1972), 465 F.2d 710; *Olsen v. Preferred Risk Mutual Insurance Co.* (1969), 284 Minn. 498, 170 N.W.2d 581; *Olokele Sugar Co. v. McCabe, Hamilton & Renny Co.* (1971), 53 Haw. 69, 487 P.2d 769.) There is no statute which would permit such an award here, nor does the plaintiff contend that there is. The No-Fault Act was declared unconstitutional (*Grace v. Howlett* (1972), 51 Ill. 2d 478, 283 N.E.2d 474) long before this suit was filed. Thus, the plaintiff cannot recover penalties unless the contract itself provides for the assessment of penalties if the insurer should refuse to pay.

There is, of course, no express provision in the policy to that effect. The majority, however, has ruled that the rider's reference to the statute incorporated its terms into the contract to such an extent that although the statute was declared null and void in *Grace*, the provision remained as part of the voluntary contract between the parties.

It is hornbook law that the statutes in force when an insurance contract is executed are read into the policy whether or not they are actually incorporated therein. (*Goble v. Central Security Mutual Insurance Co.* (1970), 125 Ill. App. 2d 298, 260 N.E.2d 860; *Bertini v. State Farm Mutual Automobile Insurance Co.* (1977), 48 Ill. App. 3d 851, 362 N.E.2d 1355, *appeal denied* (1977), 66 Ill. 2d 628.) For this very reason there was obviously neither any need nor any reason for the parties to incorporate the statute by reference into the contract. And, the language "in accordance with Article XXXV of the Illinois Insurance Code, subject to all of the provisions of the policy, except as modified herein" does not show any intention on the part of the insurer to incorporate the terms of the statute into the insurance contract, except, of course, to the extent Allstate recognized that the statute, during the time it existed, would be read in, by force of law. To the contrary, that provision clearly declares that Allstate provides coverage *subject to all the provisions* of the policy except as modified herein. In other words, Allstate intended that the terms

of the policy were to control. They and not the terms of the statute were to determine the scope of the insurer's liability.[1]

Nor is *Landis,* relied upon by the majority, persuasive here. The Illinois Supreme Court in *McCann ex rel. Osterman v. Continental Casualty Co.* (1956), 8 Ill. 2d 476, 134 N.E.2d 302, in rejecting the reasoning of the court in *Landis* ruled that mere reference to the Financial Responsibility Act was insufficient to incorporate its terms into an insurance contract when the statute would otherwise be inapplicable. That is precisely the situation here. The no-fault statute is not applicable since it was declared null and void in *Grace.* Thus, as in *McCann,* the liability of the insured depends on the terms set in the insurance contract without reference to the statute. And while the policy expressly required Allstate to pay any claim promptly, it omitted the statutory provision assessing penalties should Allstate fail to do so.

Furthermore, even if the language "in accordance with" could be considered to be language of incorporation, since the rider said "provide the following coverage in accordance with * * *," only the coverage portions and not the whole of the statute could be considered to be incorporated by reference into the policy. Statutory provisions awarding penalties and attorneys' fees are not coverage provisions; that is, provisions affording protection and indemnity if certain enumerated risks should occur. Such statutes are penal in nature and are considered as costs to reimburse the insured for enforcing the contract. *Salter v. National Indemnity Co.* (Fla. App. 1964), 160 So. 2d 147; *Commercial Casualty Insurance Co. v. McCulley* (1932), 185 Ark. 468, 48 S.W.2d 225; *Baker v. Federal Crop Insurance Corp.* (1965), 241 Ore. 609, 407 P.2d 841, *cert. granted* (1966), 384 U.S. 938, 16 L. Ed. 2d 538, 86 S. Ct. 1459, *cert. dismissed* (1966), 385 U.S. 801, 17 L. Ed. 2d 48, 87 S. Ct. 10; 6A Appleman *Insurance Law and Practice* §4031 (1972).

Finally, the majority holds that Allstate is barred from relying on the fact that the no-fault statute was declared unconstitutional by its continuing to pay benefits for more than one year. But Allstate was required under its contract to pay benefits regardless of the constitutionality of the statute. The policy, including that part affording no-fault protection and setting forth the terms of that protection, constituted a contract between the parties; the nullification of the statute, though temporarily a part of the contract as a matter of law, did not affect the rights of the parties under the contract. (*Pawlik v. State Farm Mutual*

---

[1] Of course, the mere fact Allstate intended the terms of the policy to control did not mean that they would. To the extent the policy was in conflict with the terms of a governing statute, the statute, not the policy would prevail. *Bertini v. State Farm Mutual Automobile Insurance Co.* (1977), 48 Ill. App. 3d 851, 362 N.E.2d 1355, *appeal denied* (1977), 66 Ill. 2d 628.

*Automobile Insurance Co.* (7th Cir. 1962), 302 F.2d 255.) Since the coverage remained in effect as part of the voluntary contract between the insurer and the insured, and since the insured qualified under the terms expressly set forth in the policy, Allstate was obligated by the policy to continue paying benefits. An insurer does not waive its reliance on a valid defense simply because it paid benefits it was required under the policy to pay, regardless of the existence of the defense. *Wisconsin National Loan & Building Association v. Webster* (1903), 119 Wis. 476, 97 N.W. 171.

For these reasons I believe the judgment of the trial court should be affirmed.