Julie KIMBLE, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, et al., Defendants.

No. Civ. S–95–2329 WBS/JFM.

United States District Court,
E.D. California.

July 7, 1997.

Thomas M. Witte, Law Offices of Thomas M. Witte, Sacramento, CA, for Julie Kimble.

Cary S. Samuels, Rosato and Samuels, North Hollywood, CA, Jerri L. Solomon, Guy Y. Marsh, Metropolitan Life Ins. Co., Law Dept., Irvine, CA, for Metropolitan Life Ins. Co.

Richard D. Sopp, Laurie Maloney and Wheatley, Cameron Park, CA, for Carmel Kimble.

1. Defendant Carmel Kimble, by and through her guardians ad litem Don and Kim Fink, join in MetLife's motion.

## MEMORANDUM AND ORDER

SHUBB, Chief Judge.

Defendant Metropolitan Life Insurance Company ("MetLife") moves for summary judgment on plaintiff's sole claim for declaratory relief.[1] Fed.R.Civ.P. 56. Plaintiff Julie Kimble also moves for summary judgment on this claim. *Id.*

### BACKGROUND

The following facts are undisputed. Robert Kimble ("Kimble"), now deceased, was a participant in the MetLife Insurance and Retirement Program. On or about December 10, 1991, Kimble filled out a designation of beneficiaries form ("the form") for the group life insurance coverage offered by MetLife as part of its employee benefits plan. The life insurance policy was to pay $88,000 to Kimble's designated primary beneficiaries.

The front of the form states "I hereby designate as my beneficiary for my Group Life Insurance coverage . . ." (Jackson Decl. Ex. A.) Below this statement, Kimble inserted the name of his wife, plaintiff Julie Kimble. The form, however, further stated that "[i]f more than one beneficiary is designated, use either A or B on the reverse side." (*Id.*)

The reverse side of the form is entitled "Additional Group Life Beneficiaries (Complete either A or B)." The caption to section A states "I hereby designate as additional beneficiaries," and the caption to section B states "If the said beneficiary/ies predeceases me, I designate as contingent beneficiary/ies." (*Id.*)

Kimble inserted the names of his daughter, Carmel Kimble and his mother, Marcia Kimble, in section A. He left section B blank. Above Kimble's signature in section A, the form states that "[p]ayment shall be made to all beneficiaries in equal shares, or to the survivors in equal shares, or all to the last survivor." (*Id.*)

Kimble died on April 19, 1993, On May 19, 1993, MetLife paid one-third of the policy proceeds to plaintiff. MetLife later paid one-

third to Marcia Kimble on January 12, 1994, and one-third to Carmel Kimble on October 17, 1995.

Plaintiff subsequently brought an action in state court seeking a judicial declaration that she is the sole primary beneficiary under Kimble's Group Life Insurance with MetLife, and that she is accordingly entitled to receive the entire proceeds of the policy. MetLife removed the case to this court on the basis of federal question jurisdiction, claiming that the insurance policy under which Julie Kimble seeks recovery is an employee welfare benefit plan governed by the Employee Retirement income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

MetLife now moves for summary judgment, arguing that it properly interpreted Kimble's designation of beneficiaries form to include Julie, Carmel and Marcia Kimble as co-beneficiaries.

## STANDARD OF REVIEW

Summary judgment is appropriate if the record, read in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. *See Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage the question before the court is whether there are genuine issues for trial. The court does not weigh evidence or assess credibility. *Id.*

## DISCUSSION

■ The parties agree that the group life insurance offered by MetLife is part of an employee welfare benefit plan governed by ERISA. The parties further agree that Met-Life, as the Plan Administrator, has "discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan." (Jackson Decl. Ex. E, at 167.) The court's scope of review

is therefore limited to determining whether MetLife abused its discretion by interpreting the policy in an arbitrary and capricious manner. *Snow v. Standard Ins. Co.,* 87 F.3d 327, 330 (9th Cir.1996); *Winters v. Costco Wholesale Corp.,* 49 F.3d 550, 552 (9th Cir. 1995); *Taft v. Equitable Life Assurance Soc'y,* 9 F.3d 1469, 1471 & n. 2 (9th Cir.1993). Because MetLife is both the plan administrator and plaintiff's employer, however, the court must consider its potential for conflict of interest in applying abuse of discretion review. *Snow,* 87 F.3d at 331; *Taft,* 9 F.3d at 1474.

■ Although the court gave her an extension of time to do so, plaintiff has failed to offer any evidence to support the application of a "less deferential" abuse of discretion standard. *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1323 (9th Cir.1995) (traditional abuse of discretion standard applies absent "material, probative evidence, beyond the mere fact of apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's obligations to the beneficiary"). Here, unlike the typical case where the "less deferential" abuse of discretion standard applies, MetLife did not interpret the plan in a way that would save it from paying benefits thereunder. *See Taft,* 9 F.3d at 1474 (identifying circumstances where modified abuse of discretion standard was applied).

Plaintiff argues that MetLife has a conflict of interest because an admission that its designation of beneficiaries form is ambiguous would require it to incur the expense of changing the form. Her argument is unpersuasive. As explained below, the form is not ambiguous as currently written. Accordingly, the traditional abuse of discretion review applies. *Snow,* 87 F.3d at 331; *Winters,* 49 F.3d at 552; *Taft,* 9 F.3d at 1471 & n. 2.

Plaintiff argues that MetLife's interpretation of Kimble's designation of beneficiaries was arbitrary and capricious because: (1) the form was ambiguous, and therefore the doctrine of contra proferentem requires the court to adopt plaintiff's interpretation; and (2) Kimble clearly intended that plaintiff be the sole primary beneficiary under the policy,

and the court should therefore interpret the form accordingly in order to protect the reasonable expectations of the parties.

### A. Ambiguity in the Designation of Beneficiaries Form

Plaintiff's claim that the form is ambiguous rests on the language on the reverse side of the form. The relevant language states that "[i]n the event that both A and B are completed, only those indicated in A are additional Primary Beneficiaries. All Beneficiaries listed in B are contingent beneficiaries." (Jackson Decl. Ex. A.) She argues that this language does not indicate the effect of listing additional beneficiaries in section A only and leaving section B blank. She therefore asserts that the form is ambiguous as to whether Julie and Marcia Kimble, both listed in Section A, are primary or contingent beneficiaries.

The court cannot agree that these terms render the form ambiguous. The court will not artificially create an ambiguity where none exists. *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990). "If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy." *Id.*

Read in context, the terms are clear that any persons listed in section A will be additional primary beneficiaries, regardless of whether any persons are listed in Section B. When initially asking the applicant to designate a beneficiary, the form does not explicitly use the term "primary" beneficiary. (*See* Jackson Decl. Ex. A (stating "I hereby designate as my beneficiary ...").) The language in Section A uses the same terminology as the front of the form, simply asking the applicant to list additional "beneficiaries." (*Id.*) In contrast, section B of the form carefully and explicitly refers to "contingent" beneficiaries as such. (*See id.* (stating "I designate as contingent beneficiary/ies").)

■ The form itself therefore shows that MetLife consistently distinguishes between "beneficiaries" and "contingent beneficiaries," and the plan booklet explains that contingent beneficiaries receive nothing unless all primary beneficiaries predecease the applicant. (Jackson Decl. Ex. E, at 24.) This language, especially in light of MetLife's express warning that only persons listed in Section A are additional primary beneficiaries, leads to only one rational conclusion—that any beneficiaries designated as "additional beneficiaries" in section A will be considered additional primary beneficiaries regardless of whether additional persons are listed in Section B.

■ The doctrine of contra proferentem, which requires the court to construe ambiguous terms against the drafter of the policy, does not compel a different result. As stated, the form is not ambiguous. Even if it was, the doctrine of contra proferentem would not apply under the circumstances of this case. *Winters*, 49 F.3d at 554 (doctrine of contra proferentem does not apply when the ERISA plan grants the Plan Administrator explicit discretion to interpret the plan); *Atwood*, 45 F.3d at 1324 (application of contra proferentem doctrine would completely eviscerate the abuse of discretion standard).

Accordingly, the form unambiguously names Carmel and Marcia Kimble, in addition to plaintiff, as primary beneficiaries.

### B. Reasonable Expectations of the Parties

Plaintiff next argues that even if designation of beneficiaries form was unambiguous, Kimble's designation of Carmel and Marcia Kimble as co-beneficiaries should be disregarded because such designation was contrary to the "reasonable expectations" of the affected parties. To support her assertion that MetLife abused its discretion in refusing to interpret the plan in accordance with the parties' expectations, she makes the following arguments: (1) the evidence shows that Kimble intended plaintiff to be his sole beneficiary; and (2) MetLife failed to consider the effect of California community property law on Kimble's designation of beneficiaries.

#### 1. Kimble's Intent

■ MetLife did not abuse its discretion by deciding that plaintiff was only entitled to one-third of the proceeds despite the evi-

dence showing that Kimble intended otherwise. ERISA requires the plan administrator to discharge its duties "in accordance with the documents and instruments governing the plan ..." 29 U.S.C. § 1104(a)(1)(D). Because each plan participant is the master of his or her own ERISA plan, the court determines his or her intent by looking at the designation of beneficiaries on file at the time of the participant's death. *McMillan v. Parrott,* 913 F.2d 310, 312 (6th Cir.1990); *see also Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986) (ERISA does not allow for oral modifications of benefit plans since it expressly requires that such plans be "established and maintained pursuant to a written instrument"). MetLife therefore did not abuse its discretion by basing its decision solely on the beneficiary designation form, even in the face of extraneous evidence indicating Kimble's intent was otherwise. *See Taft,* 9 F.3d at 1473 ("even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion") *Bolling v. Eli Lilly & Co.,* 990 F.2d 1028, 1029–30 (8th Cir.1993) ("the [administrator] did not abuse its discretion merely because there was evidence before it that would have supported an opposite decision").

### 2. Effect of California Community Property Law

Although plaintiff's arguments with respect to the applicability of California community property law are not entirely clear, she appears to make three alternative arguments.

■ Plaintiff first argues that because of the community property laws, the "standard of care" in California is to designate one's spouse as the sole primary beneficiary of a group life insurance policy. (*See* Mills Decl.) Even if the standard provides circumstantial evidence of Kimble's intent, however, it does not change the outcome. As stated above, an insurer does not act in an arbitrary and capricious manner when it distributes benefits strictly according to the designation of beneficiaries form. *McMillan,* 913 F.2d at 312.

■ Plaintiff next apparently argues that California community properly law entitles

her to one-half of the insurance proceeds as community property, and that she is entitled to one-third of the remaining half pursuant to Kimble's designation of beneficiaries. To the extent plaintiff argues that the plan administrator must recognize her community property rights and accordingly pay her one-half of the proceeds under the plan, such claim is preempted by ERISA.

ERISA preempts all state law claims that "relate to" any employee benefit plan. 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987). ERISA regulates employee welfare benefit plans that "through the purchase of insurance or otherwise" provide benefits in the event of death, 29 U.S.C. § 1002(1), and therefore preempts state law to the extent the state law purports to impose obligations on the plan administrator that are inconsistent with those obligations imposed by ERISA. *See Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126, 129 (6th Cir.1996) (listing the various circuit court decisions holding that ERISA preempts state laws dealing with designation of beneficiaries).

ERISA requires MetLife to pay proceeds in accordance with Kimble's designation of beneficiaries. *McMillan,* 913 F.2d at 312. In contrast, California community property law entitles plaintiff to at least one-half of the proceeds. *See Polk v. Polk,* 228 Cal.App.2d 763, 39 Cal.Rptr. 824 (1964). Because MetLife's obligations as plan administrator under ERISA do not necessarily satisfy plaintiff's ultimate rights under California community property law, ERISA preempts the application of the community property law insofar as it would require MetLife to pay benefits in accordance with plaintiff's community property rights. *See Boggs v. Boggs,* —— U.S. ——, ——, 117 S.Ct. 1754, 1761, 138 L.Ed.2d 45 (1997); *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 484–85, 112 L.Ed.2d 474 (1990).

Plaintiff lastly argues that in order to protect the reasonable expectations of the parties, the court should create a federal common law which is consistent with California community property law. Creation of such a

federal common law, however, would conflict with the policies of ERISA.

In enacting ERISA, Congress sought to encourage a uniform, uncomplicated administration of ERISA plans, many of which function in a number of states. *See PM Group Life Ins. Co. v. Western Growers Assurance Trust,* 953 F.2d 543, 547 (9th Cir.1992). To allow state law to alter the allocation of ERISA benefits would deprive employers of the advantage of the uniform system that Congress intended. *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 341–42 (6th Cir.1993); *McMillan,* 913 F.2d at 311–12 (Congress intended ERISA plans to be uniform in their interpretation and simple in their application). Where, as here, the policy includes a provision calling for the filing of written designations to name or change a beneficiary, "[i]t would be counterproductive to compel the Policy administrator to look beyond [the written designation of beneficiaries on file and] into varying state laws regarding wills, trusts and estates, or domestic relations to determine the proper beneficiaries of Policy distributions." *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 16 (2d Cir.1993); *see also McMillan,* 913 F.2d at 312 ("[r]ules requiring payment to the named beneficiary yield simple administration, avoid double liability, and ensure that beneficiaries get what's coming to them without the folderol essential under less-certain rules").

■ Moreover, creation of a federal common law is inappropriate where ERISA expressly addresses the issue; federal courts may not use state law to re-write a federal statute. *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 647 (7th Cir.1993); *Nachwalter,* 805 F.2d at 960. As discussed above, ERISA specifically requires the plan administrator to discharge its duties "in accordance with the documents and instruments governing the plan ..." 29 U.S.C. § 1104(a)(1)(D); *McMillan,* 913 F.2d at 312. ERISA's mandate that plan administrators follow the plan documents to determine beneficiaries therefore precludes the development of the common law rule that plaintiff seeks. *See Thomason,* 9 F.3d at 647; *Nachwalter,* 805 F.2d at 960.

Accordingly, the court declines plaintiff's invitation to create a federal common law under ERISA that parallels California's community property law.

## CONCLUSION

MetLife neither abused its discretion nor interpreted the form in an arbitrary and capricious manner, MetLife reasonably, and, in the court's view, correctly construed Kimble's form to require that the proceeds be distributed equally between the three designated beneficiaries, even though additional documentary evidence or the application of California community property law would support a contrary interpretation or result.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, DENIED, and that defendant's motion for summary judgment be, and the same hereby is, GRANTED.